UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
TERRENCE R. JAMISON,

                                        Plaintiff,

         v.                                              6:08-CV-856-DNH-GHL

MICHAEL CHAPMAN; BERNARD STOOKS;
WILLIAM MOOREHEAD; JAMES CATANZARO;
RICHARD STEVENSON; COREY CONLEY;
HALE E. SMITH; JANET HANNA; PAMELA
CARRIER; KEITH ZULKO; and ERIC JONES,

                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                             OF COUNSEL:

BOSMAN LAW OFFICE                        A. J. BOSMAN, ESQ.
Attorney for the Plaintiff
6599 Martin Street
Rome, New York 13440

NEW YORK STATE ATTORNEY GENERAL          KELLY L. MUNKWITZ, ESQ.
Attorneys for Defendants Chapman, Stooks,
Moorehead, Catanzaro, Stevenson,
Conley, Smith, Hanna, and Carrier
The Capitol
Albany, New York 12224

SHEEHAN GREENE CARRAWAY                   THOMAS D. LATIN, ESQ.
GOLDERMAN & JACQUES LLP
Attorneys for Defendants Zulko and Jones
54 State Street
Albany, New York 12207

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

I. **INTRODUCTION**

Plaintiff Terrence Jamison ("plaintiff") brings suit against supervisors and directors at the Central New York Psychiatric Center ("Psychiatric Center") and two members of his union, the New York State Correctional Officers & Police Benevolent Association, Inc. ("NYSCOPBA").  In his amended complaint, plaintiff brings claims against all defendants for disparate treatment (Causes of Action One, Two, and Three), hostile work environment (Claims Four, Five, and Six), and unlawful retaliation (Causes of Action Seven, Eight, and Nine) pursuant to 42 U.S.C. § 1981 ("§ 1981"), 42 U.S.C. § 1983 ("§ 1983"), and the New York Human Rights Law, N.Y. Exec. § 290, et seq. ("HRL").  Plaintiff also alleges all defendants unlawfully conspired to deprive him of his constitutional rights (Causes of Action Ten and Eleven) and discriminated against him on account of his disability (Causes of Action Twelve, Thirteen, and Fourteen).  Finally, without pleading a specific statute under which his claim may be asserted, plaintiff alleges that his supervisors at the Psychiatric Center were deliberately indifferent to the unlawful actions of the defendants (Cause of Action Fifteen).[1] All of the defendants are sued individually and plaintiff's employer is not a defendant.

Before filing their answers, all defendants now move to dismiss Claims One through Fourteen pursuant to Federal Rule of Civil Procedure 12(b)(6).  The defendants are

---

[1] Plaintiff's fifteenth and final cause of action for supervisory liability is only asserted against defendants Moorehead, Catanzaro, Stevenson, Conley, Smith, and Hanna. (See Pl.'s. Am. Compl., Dkt. No. 37, ¶ 78.)  These defendants do not submit an argument for why plaintiff's supervisory liability claim should be dismissed.  Therefore, any argument in favor of dismissing Cause of Action Fifteen submitted by defendants Zulko and Jones is moot as they are not named defendants in that claim, and plaintiff's final cause of action is not currently at issue.

represented by separate counsel in relation to their different employers, and accordingly, submit separate arguments in support of their respective motions. Defendants Michael Chapman, Bernard Stooks, William Moorehead, Hal E. Smith, James Catanzaro, Richard Stevenson, Corey Conley, Janet Hanna, and Pamela Carrier (the "state defendants") work at the Psychiatric Center and are represented by the New York State Attorney General. Defendants Keith Zulko and Eric Jones (the "union defendants") worked for the NYSCOPBA at all relevant times as Vice President and Business Agent, respectively, and are represented by private counsel. Plaintiff opposes both motions to dismiss. Oral argument was heard on March 25, 2009 in Utica, New York. Decision was reserved.

## II. <u>BACKGROUND</u>

The following facts alleged in the complaint are accepted as true for purposes of resolving defendants' Rule 12(b)(6) motion to dismiss. <u>See</u> <u>McCarthy v. Dun & Bradstreet Corp</u>., 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). In June of 2003, plaintiff was employed by the New York State Office of Mental Health as a Security Hospital Treatment Assistant at the Psychiatric Center in Marcy, New York. As an African-American, plaintiff alleges he was subjected to a pattern of racially discriminatory conduct and a hostile work environment at the Psychiatric Center between June 2003 and October 2004. Plaintiff alleges that his supervisors, defendants Chapman and Moorehead, ignored his complaints of such conduct and that defendant Chapman often told plaintiff to "remember who does your evaluation." (Pl's. Am. Compl., Dkt. No. 37, ¶ 27.)

As a result, plaintiff filed an internal complaint of racial discrimination with the Psychiatric Center's Human Resources Director on or about October 4, 2004. As news of his complaint spread throughout the Psychiatric Center, plaintiff and one of the African-American

witnesses identified in his complaint were subjected to discriminatory and retaliatory conduct, including racially derogatory comments and the witness's eventual termination shortly after the complaint was filed.  The Psychiatric Center launched an investigation of plaintiff's complaint on November 9, 2004.  In January of 2005, an internal memorandum was issued concluding that plaintiff was frequently subjected to comments that were inappropriate for the workplace and that defendant Chapman needed cultural sensitivity training.

On June 14, 2005, plaintiff received notice that he was no longer entitled to Workers' Compensation benefits in connection with a prior work-related injury to his shoulder.  He was also informed that he would be terminated pursuant to New York Civil Service Law § 73 because he had received Workers' Compensation benefits for more than a year.  Following his union's successful negotiation on his behalf, plaintiff returned to work on August 8, 2005.

Plaintiff alleges he was subjected to multiple acts of retaliation upon his return to work, including intimidation, harassment, and a dispute with his supervisors about whether he worked overtime.  Plaintiff also alleges he was further harassed when defendant Stooks questioned him in front of his co-workers about his decision to pick up his paycheck at work despite calling in sick.  According to plaintiff, he became disabled due to work-related stress on August 19, 2005.

Plaintiff met with his union representatives, defendants Zulko and Jones, on August 24, 2005 to discuss his complaints with the state defendants, including the possibility of a transfer to another psychiatric center.  According to plaintiff, the union defendants agreed at this first meeting to process his grievance and help facilitate his transfer.  On August 31, 2005, plaintiff met with defendants Zulko, Jones, Stevenson, and Conley in an attempt to

resolve his internal complaints.  Before the meeting began, plaintiff alleges he saw defendant Zulko and defendant Stevenson emerge together from behind a closed door.  At the second meeting, the defendants refused to facilitate plaintiff's request for a transfer to another facility or take corrective action with respect to his complaints of racial discrimination and harassment at the Psychiatric Center.  Plaintiff alleges that white employees and employees who complain of disabilities other than mental stress are routinely supported in their efforts to secure transfers to other mental health facilities.

On September 1, 2005, a New York State Trooper visited plaintiff's home and instructed that he report to defendant Jones.  During the encounter, the Trooper admitted to plaintiff that "we don't normally do this."  (Id. ¶ 44.)  Afterwards, plaintiff wrote a letter to the principal clerk of the Psychiatric Center, defendant Carrier, asking about his claim for Workers' Compensation benefits on account of his mental stress disability.  On September 8, 2005, defendant Carrier contacted the State Insurance Fund to formally contest plaintiff's Workers' Compensation claim.  According to plaintiff, defendant Carrier worked with the other defendants to intentionally omit or misrepresent the facts surrounding his injury, thereby resulting in the denial of his claim for benefits, in retaliation for his prior complaints of discrimination.

In a letter dated July 20, 2006, plaintiff was again informed that he would be terminated as of August 20, 2006 because he had been medically disabled for more than a year.  Plaintiff has not since returned to the Psychiatric Center.  Plaintiff's original complaint was filed on August 8, 2008.

## III.  DISCUSSION

### A.  Motion to Dismiss Pursuant to Rule 12(b)(6)

In consideration of the defendants' motions to dismiss under Rule 12(b)(6), all factual allegations and ambiguities are construed in the light most favorable to the plaintiff. See McCarthy, 482 F.3d at 191.  A cause of action will be dismissed for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  The question presented is whether a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face," and a plaintiff must have "nudged [his] claims across the line from conceivable to plausible" in order to avoid dismissal.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).

### B.  Statute of Limitations

As a preliminary matter, plaintiff concedes that he may not seek damages for any acts of discrimination or retaliation alleged to have occurred more than three years before the filing of his original complaint on August 8, 2008.  See Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 331 (2d Cir. 1997) (citing Bd. of Regents of S.U.N.Y. v. Tomanio, 446 U.S. 478, 484, 100 S. Ct. 1790, 1795 (1980)).  Therefore, plaintiff will be barred from recovering damages for any acts of discrimination or retaliation alleged to have occurred prior to August 8, 2005.

However, plaintiff may rely upon acts prior to the three year statute of limitations for his hostile work environment claims pursuant to the Supreme Court's ruling in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061 (2002).  So long as at least one of the acts giving rise to his hostile work environment claim occurred within the statutory time

period, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  Id. at 117, 122 S. Ct. at 2074.  Therefore, plaintiff is not necessarily barred from recovering for hostile acts outside the three-year statute of limitations.  Rather, he may do so provided he alleges acts which contributed to the hostile work environment and occurred within the filing period.

### C. The Union Defendants' Motion to Dismiss

#### 1. Racial Discrimination (Causes of Action One, Two, and Three)

Plaintiff's claims for racial discrimination are brought pursuant to § 1981, § 1983, and the HRL.  The union defendants contend that plaintiff does not allege sufficient facts in his amended complaint to show they were personally involved in any of the alleged acts of racial discrimination.  To state a viable claim pursuant to §1981 or § 1983, a plaintiff must plead facts demonstrating the defendant's personal involvement in the alleged violation.  Patterson v. County of Oneida, N.Y., 375 F.3d 206, 229 (2d Cir. 2004) (citations omitted).  Similarly, the HRL requires that the defendant have "actually particpate[d] in the conduct giving rise to a discrimination claim."  Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995)).

The facts pleaded with respect to the union defendants are limited to the allegations made in paragraphs 40-45 of the amended complaint.  (See Pl's. Am. Compl., Dkt. No. 37, ¶¶ 40-45.)  With respect to his allegations of racial discrimination, plaintiff asserts that the union defendants initially agreed to help process his employee grievance and secure his transfer to another psychiatric center but later downplayed his complaints and refused to support his transfer request after they met with defendant Stevenson.  (Id. ¶¶ 40-

41.)  Plaintiff further alleges that the defendants had supported transfer requests made by white employees.  (Id. ¶ 42.)[2]

Construing these factual assertions in the light most favorable to the plaintiff, the amended complaint states sufficient facts to show that the union defendants acted intentionally and were personally involved in the alleged acts of discrimination.  In particular, given the abrupt change of heart exhibited by the union defendants after the closed-door meeting with defendant Stevenson on August 31, 2005, there exists a reasonable inference that they acted in cooperation with the state defendants to intentionally discriminate against plaintiff on account of his race.  Even assuming that the union defendants deny any cooperation with defendant Stevenson, the sudden change in their attitude towards plaintiff, coupled with plaintiff's allegation that white employees' requests for transfers are frequently accommodated, is sufficient to demonstrate the union defendants' personal involvement in the alleged acts of discrimination and otherwise satisfies plaintiff's minimal burden at this stage in the proceedings.

The union defendants' argument that they were not state actors for purposes of liability under § 1983 is equally unpersuasive in light of their alleged actions before and after their meeting with defendant Stevenson.  Discrimination claims brought pursuant to § 1983 require "that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988).  Nevertheless, the

---

[2] As discussed in the background section, plaintiff also alleges the union defendants played a role in sending a New York State Trooper to his home "to intimidate and harass Plaintiff."  (Pl's. Am. Compl., Dkt. No. 37, ¶ 44.)  Although it is difficult to discern which factual allegations pertain to the individual claims against the union defendants, the incident with the New York State Trooper will not be considered as an allegation of racial discrimination because plaintiff never alleges that the Trooper was sent to his home on account of his membership in a protected class. (See id.)

conduct of private employees may be considered state action "when a private actor operates as a 'willful participant in joint activity with the State or its agents.'" Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296, 121 S. Ct. 924, 930 (2001) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 941, 102 S. Ct. 2744, 2756 (1982)).

An alleged conspiracy between state and private actors may constitute joint state action by all of the defendants.  See Hughes v. Patrolmen's Benevolent Ass'n of the City of New York, 850 F.2d 876, 880-81 (2d Cir. 1988).  Like the present plaintiff, the plaintiff in Hughes asserted a § 1983 action against, *inter alia*, the First Vice President of his police officer's union and the City of New York Police Department under the theory that the two defendants conspired with one another to deprive him of his federal civil rights.  Id.  The Second Circuit affirmed the decision to allow the § 1983 claim to proceed against the First Vice President of the police officer's union in light of the factual allegations that, if true, would establish that he acted in concert with plaintiff's commanding officers within the police department.  Id. at 881.

Applying the holding in Hughes to the factual allegations here, plaintiff's assertion that the union defendants reneged on their initial agreement to help effect his transfer after meeting behind closed doors with defendant Stevenson provides a factual basis to infer that the union defendants conspired with plaintiff's supervisors at the Psychiatric Center. Accordingly, the union defendants may be considered state actors for purposes of plaintiff's § 1983 claims.

## 2.  **Hostile Work Environment (Causes of Action Four, Five, and Six)**

To sustain a claim for hostile work environment, plaintiff must allege facts that, if true, would establish that his workplace was so "permeated with discriminatory intimidation, ridicule, and insult" that his employment conditions were altered.  Patterson, 375 F.3d at 227 (internal quotation marks and citation omitted).  Plaintiff must also plead facts that show he "was subjected to the hostility because of [his] membership in a protected class." Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 241 (2d Cir. 2007) (quoting Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999)).  Accordingly, a workplace will not be considered hostile if the environment is equally intimidating or offensive for both members and non-members of plaintiff's protected class.  Brennan, 192 F.3d at 318.

In contrast to the state defendants, the union defendants are not alleged to have participated in any of the conduct which occurred outside the three-year statute of limitations.  Rather, plaintiff's first allegation against the union defendants occurred on August 31, 2005 when they refused to process his workplace grievance or facilitate his transfer to another facility.  Therefore, despite the Supreme Court's ruling in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061 (2002), none of the hostile acts which are alleged to have occurred prior to August 31, 2005 will be considered in relation to plaintiff's hostile work environment against the union defendants.

Taking into consideration the limited factual allegations related to the union defendants, plaintiff's pleadings are insufficient to state a claim against them for a hostile work environment.  Although plaintiff alleges the union defendants ordered a New York State Trooper to harass him at his home on September 1, 2005, plaintiff never alleges that this was done as a result of his membership in a protected class.  Instead, this discrete event gives

rise only to plaintiff's claim of retaliation.  Plaintiff's remaining allegation against the union defendants–that they failed to process his workplace grievance and facilitate his transfer to another facility–is likewise insufficient, but this allegation fails for a different reason.  Although plaintiff alleges that the union defendants were motivated by his status as an African-American, this single instance of hostility on account of his race does not rise to the level of pervasiveness needed to sustain a hostile work environment claim.  A single act cannot satisfy the threshold level of severity unless it is very serious.  <u>Alfano v. Costello</u>, 294 F.3d 365, 374 (2d Cir. 2002) (citing <u>Brennan</u>, 192 F.3d at 318).  Examples of a solitary act that would be considered sufficiently pervasive include committing rape, <u>see</u> <u>Ferris v. Delta Air Lines, Inc.</u>, 277 F.3d 128, 136 (2d Cir. 2001) (citation omitted) or making a vile and sexually explicit abusive comment in front of a plaintiff's subordinates.  <u>See</u> <u>Howley v. Town of Stratford</u>, 217 F.3d 141, 154 (2d Cir. 2000).  By way of comparison to these examples, the union defendant's refusal to process plaintiff's grievance and facilitate his transfer during the August 31, 2005 meeting falls far below the base level of severity for establishing a hostile work environment.  Therefore, without more factual allegations related to the union defendants, their motion to dismiss plaintiff's hostile work environment claims will be granted (<u>Causes of Action Four</u>, <u>Five</u>, and <u>Six</u>).

### 3.  <u>Retaliation (Causes of Action Seven, Eight, and Nine)</u>

As with his claims of racial discrimination and hostile work environment, plaintiff brings his retaliation claims pursuant to § 1981, § 1983, and the HRL. Section 1983 provides a cause of action against state actors who participate in the deprivation of a person's federal constitutional rights.  42 U.S.C. § 1983.   Thus, in addition to proving that the defendants are

state actors, a plaintiff must allege the violation of a federal constitutional right.  West, 487
U.S. at 48, 108 S. Ct. at 2254-55.

        According to the amended complaint, plaintiff's retaliation claim pursuant to § 1983
is based upon the deprivation of his rights under the equal protection clause of the
Fourteenth Amendment to the United States Constitution.  (See Pl's. Am. Compl., Dkt. No.
37, ¶ 63.)  However, the conduct plaintiff complains of "is alleged to be the product, *not of
discrimination*, but of retaliation for [his] *complaints of discrimination*."  Bernheim v. Litt, 79
F.3d 318, 323 (2d Cir. 1996) (emphasis added).  While § 1983 claims for retaliation typically
allege a violation of the plaintiff's First Amendment rights, the equal protection clause does
not protect against retaliation due to complaints of racial discrimination.  Id. ("[W]e know of
no court that has recognized a claim under the equal protection clause for retaliation
following complaints of discrimination.  Given the availability of Title VII, which [the plaintiff]
has chosen not to invoke, we see no reason to break new constitutional ground in this
case.").  As with the plaintiff in Bernheim, the plaintiff here neither alleged a deprivation of his
First Amendment right to free speech nor asserted a cause of action pursuant to the anti-
retaliation provision of Title VII.  Therefore, having failed to allege the deprivation of a
recognized constitutional right in connection with his retaliation claim, plaintiff's retaliation
claim must be dismissed to the extent it is brought under § 1983 (Cause of Action Eight).

        In any event, plaintiff may still assert a federal claim for retaliation under § 1981
(Cause of Action Seven).  See Choudhury v. Polytechnic Inst. of N.Y., 735 F.2d 38, 43 (2d
Cir. 1984) ("A retaliation claim is cognizable under § 1981 to make that section an available
and effective remedy for racially motivated employment discrimination.").  Similarly, plaintiff's

failure to assert a deprivation of his First Amendment right to free speech does not bar his state law retaliation claim under the HRL (Cause of Action Nine).

To establish a prima facie case of retaliation, plaintiff must plead facts showing that: (1) he engaged in a protected activity; (2) the defendant was aware of the activity; (3) the defendant took adverse action against him; and (4) there was a causal connection between the protected activity and the adverse action.  Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 608 (2d Cir. 2006) (citation omitted); Lizardo v. Denny's, Inc., 270 F.3d 94, 105 (2d Cir. 2001) (citation omitted).

The union defendants again argue that there are insufficient allegations to establish that either of them were personally involved in any allegedly retaliatory action.  With respect to his retaliation claim, plaintiff alleges that a New York State Trooper visited his residence on September 1, 2005 to harass and intimidate him.  (Pl's. Am. Compl., Dkt. No. 37, ¶ 44.) According to plaintiff, the Trooper said "we don't normally do this" and ordered him to report to defendant Jones.  (Id.)

Two aspects of the alleged incident with the New York State Trooper serve as circumstantial evidence from which the union defendants' personal involvement could be established: first, the Trooper visited plaintiff's home on September 1, 2005–the day after plaintiff unsuccessfully tried to persuade the union defendants to help process his workplace grievance and secure his transfer on August 31, 2005; and second, the Trooper ordered him to report to his union's Vice President, defendant Jones, instead of one of his supervisors at the Psychiatric Center.  Accordingly, there is a factual basis to conclude that the union defendants, at a minimum, cooperated with some of the state defendants  to send a Trooper to plaintiff's home.

Alternatively, the union defendants argue that plaintiff has not pleaded facts demonstrating that he suffered a materially adverse employment action after filing his internal complaint of racial discrimination on October 4, 2004.  Whether an employment action is materially adverse depends upon if the defendant's conduct would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fey Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (internal quotations omitted).

Under that standard, plaintiff's factual allegations rise to the level of a materially adverse employment action.  The allegation that the union defendants cooperated with the state defendants to cause a New York State Trooper to arrive at plaintiff's home and order him to report to defendant Jones distinguishes his claim from "those petty slights or minor annoyances that often take place at work and that all employees experience."  Id.  A police officer's visit to one's residence is a serious matter and confers a high level of intimidation through the impression that law enforcement officials will support the supposedly retaliatory party in the event of further conflict.  At the very least, a reasonable fact finder could determine that the visit by the Trooper would dissuade a reasonable employee from making additional charges of discrimination.

Plaintiff also pleads sufficient facts to establish a causal connection between his internal complaint of racial discrimination and the adverse employment actions.  In light of his allegation that the union defendants' stance with respect to his internal grievance changed within the span of a week after they met behind closed doors with the state defendants, there is a factual basis for concluding that the union defendants acted to help further the state defendants' retaliatory motive in response to plaintiff's filing of an internal complaint of racial

discrimination.  Therefore, the motion to dismiss plaintiff's retaliation claims against the union defendants asserted under <u>Causes of Action Seven</u> and <u>Nine</u> will be denied.

### 4.  <u>Conspiracy to Violate Plaintiff's Constitutional Rights (Causes of Action Ten and Eleven)</u>

The union defendants also move to dismiss plaintiff's claim that they conspired to deprive him of his constitutional rights.  First, they contend that plaintiff's claim should be dismissed pursuant to the intra-corporate conspiracy doctrine whereby two individuals working for the same entity cannot be liable for conspiracy as a matter of law.  Second, they argue the complaint does not set forth a factual basis for establishing that they conspired to deprive plaintiff of his constitutional rights.

In order to state a conspiracy claim pursuant to 42 U.S.C. § 1985 ("§ 1985"), plaintiff must allege facts that, if true, could establish: (1) the defendants entered into a conspiracy; (2) the objective of the conspiracy was to deprive the plaintiff of his constitutional rights; (3) the defendants committed an overt act in furtherance of the conspiracy; and (4) the plaintiff was deprived of one or more of his constitutional rights.  <u>See</u> <u>Thomas v. Roach</u>, 165 F.3d 137, 146 (2d Cir. 1999) (citation omitted).

The intra-corporate conspiracy doctrine provides that "officers, agents, and employees of a single corporate entity are legally incapable of conspiring together."  <u>Hartline v. Gallo</u>, 546 F.3d 95, 99, n.3 (2d Cir. 2008) (quoting <u>Hartline v. Gallo</u>, No. 03-CV-1974, 2006 WL 2850609, at *9 (E.D.N.Y. Sept. 30, 2006)); <u>see also</u> <u>Herrmann v. Moore</u>, 576 F.2d 453, 459 (2d Cir. 1978) ("[T]here is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment.").  Under this

standard, the union defendants were capable of conspiring with the state defendants because they undisputably work for different employers.  The union defendants incorrectly construe plaintiff's conspiracy claim as alleging that they conspired with only one another, whereas the allegations in plaintiff's amended complaint assert a conspiracy between the union defendants and a number of the state defendants, including defendant Stevenson during the closed-door meeting on August 31, 2005 and defendants Smith and Catanzaro prior to the arrival of the Trooper at plaintiff's home on September 1, 2005.  Accordingly, the intra-corporate conspiracy doctrine does not bar plaintiff's conspiracy claim against the union defendants.

The union defendants' argument that plaintiff does not plead sufficient facts to establish a conspiracy between them and the state defendants must fail for the same reasons as their argument that plaintiff does not plead facts establishing their personal involvement in the deprivation of his constitutional rights.  By virtue of the allegation that the union defendants withdrew their promise to process plaintiff's grievance and facilitate his transfer only moments after meeting with state defendant Stevenson, there is a factual basis to establish that the union defendants entered into a conspiracy.  Additionally, plaintiff alleges that all of the defendants neglected his transfer request on account of his race.  Therefore, after considering these two allegations together, plaintiff has adequately stated a conspiracy claim against the union defendants (<u>Causes of Action Ten</u> and <u>Eleven</u>).

5. **Discrimination on Account of Disability (Causes of Action Twelve, Thirteen, and Fourteen)**

Plaintiff alleges he was discriminated on account of his "mental stress" disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1201 et seq., the Rehabilitation Act, 29 U.S.C. §§ 791 et seq., and the HRL.  The union defendants argue the disability discrimination claims should be dismissed because the ADA and Rehabilitation Act do not allow for individual liability and the HRL claim is based upon events which are alleged to have occurred outside the applicable one-year statute of limitations.  Plaintiff fails to address the union defendants' argument as to individual liability under either the ADA or the Rehabilitation Act, and accordingly, the federal disability discrimination claims will be dismissed (Causes of Action Twelve and Thirteen).

In contrast, plaintiff is not barred by the statute of limitations from asserting a disability discrimination claim under the HRL.  Notably, the union defendants cite N.Y. Exec. Law § 297(5) and Freudenthal v. County of Nassau, 99 N.Y.2d 285, 292 (2003) for the proposition that plaintiff's HRL claim is subject to a one-year filing period.  (See Union Defs'. Mem. of Law, Dkt. No. 42-3, 4.)  However, section 297 governs complaints filed with the Division of Human Rights as opposed to civil court filings.  See N.Y. Exec. Law § 297. Similarly, Freudenthal considered the procedural requirements for filing a complaint with the Division of Human Rights.  See 99 N.Y.2d at 288-89.  Instead of a one-year filing period, plaintiff has three years to file a timely disability discrimination claim under the HRL.  See Pilgrim v. McGraw-Hill Companies, Inc., 599 F. Supp. 2d 462, 474 (S.D.N.Y. 2009) (citing inter alia N.Y. C.P.L.R. § 214(2); Lambert v. Genesee Hosp., 10 F.3d 46, 59 (2d Cir. 1993)).

Therefore, plaintiff's disability discrimination claim under Cause of Action Fourteen will not be dismissed.

### D.  The State Defendants' Motion to Dismiss

#### 1.  Section 1981 Claims Against State Actors (Causes of Action One, Four, and Seven)

Plaintiff cannot simultaneously assert claims against state actors under § 1981 and § 1983 pursuant to the Supreme Court's ruling in Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735, 109 S. Ct. 2702, 2723 (1989).  Admittedly, there is a split amongst federal appellate courts for whether a 1991 amendment to § 1981 overruled the holding in Jett. Compare Oden v. Okitebbeha County, Miss., 246 F.3d 458, 463 (5th Cir. 2001) (holding the amendment to § 1981 did not disturb the holding in Jett) with Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1205 (9th Cir. 1996) (holding the amendment to § 1981 overruled the holding in Jett).  However, the Second Circuit has yet to consider this issue, see Whaley v. City Univ. of N.Y., 555 F. Supp. 2d 381, 401 (S.D.N.Y. 2008) (citing Anderson v. Conboy, 156 F.3d 167, 178, n.19 (2d Cir. 1998)), and a number of district courts in this Circuit have held that the holding in Jett remains good law.  Whaley, 555 F. Supp. 2d at 401 (collecting cases).  Therefore, to the extent asserted against state actors, all claims under § 1981 (Causes of Action One, Four, and Seven) will be dismissed and all additional arguments relevant to § 1981 need not be considered.[3]

---

[3] At this stage in the proceedings, plaintiff may still recover damages from the union defendants pursuant to either § 1981 or § 1983 depending upon whether he proves the union defendants were state actors.  If plaintiff carries his burden to prove they were state actors, his claims brought pursuant to § 1981 must be dismissed.  Conversely, if plaintiff is unable to prove the union defendants were state actors, his § 1983 claims against them must be dismissed, and he may only bring claims against them pursuant to § 1981.

## 2.  **Individual Liability under the HRL (Causes of Action Three, Six,**
   **Nine, and Fourteen)**

The state defendants also contend that they may not be held individually liable for plaintiff's claims asserted under the HRL.  With respect to employers, the HRL provides, in pertinent part: "It shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's age, race, creed, color, . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. EXEC. LAW § 296(1)(a).  Further, in regards to individuals, the HRL also provides: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."  Id. § 296(6).

The state defendants correctly cite Patrowich v. Chem. Bank, for the proposition that a corporate employee may not be subject to individual liability under the HRL unless he either had an ownership interest in the company or the power to "do more than carry out personnel decisions made by others." 63 N.Y.2d 541, 542 (1984).  Nevertheless, plaintiff's HRL claims against the individual state defendants may proceed so long as plaintiff alleges facts showing that they directly participated in the alleged unlawful employment practice. See, e.g., Evans-Gadsen v. Bernstein Litowitz Berger & Grossman, LLP, 332 F. Supp. 2d 592, 598 (S.D.N.Y. 2004); Hirsch v. Columbia Univ., Coll. of Physicians & Surgeons, 293 F. Supp. 2d 372, 377-78 (S.D.N.Y. 2003); Bass v. World Wrestling Fed'n Entm't, Inc., 129 F. Supp. 2d 491, 505 (E.D.N.Y. 2001).

Under this standard, the state defendants may be held individually liable under the HRL for their alleged direct participation in unlawful acts of discrimination, retaliation, and

conduct contributing to a hostile work environment.  For example, plaintiff alleges that some of the state defendants intentionally misrepresented or omitted information concerning his Workers' Compensation claim resulting in the denial of disability benefits.  Plaintiff also alleges that some of the state defendants were his supervisors and had the authority to either facilitate his request to be transferred to another state psychiatric facility or modify his overtime assignments.  Accordingly, to the extent that plaintiff alleges each state defendant either had supervisory authority and/or directly participated in unlawful conduct, plaintiff may hold the state defendants individually liable for his HRL claims (Causes of Action Three, Six, Nine, and Fourteen).

### 3. **Personal Involvement**

The state defendants also argue that plaintiff does not allege sufficient facts to establish that they were personally involved or directly participated in the deprivation of his civil rights for any of the claims brought under § 1983 or the HRL.  See Patterson, 375 F.3d at 229 (personal involvement required for claims brought under § 1983); Feingold, 366 F.3d at 158 (individual liability allowed so long as the defendant "actually participated" in the unlawful conduct).  A defendant's personal involvement may be demonstrated in a number of ways.  Even if the defendant is not a supervisory official, he may nonetheless be personally involved in the violation of plaintiff's civil rights if he directly participated in the unlawful conduct.  Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991).  Otherwise, if the defendant is alleged to have acted as plaintiff's supervisor, his personal involvement may be shown through his failure to correct the illegal behavior after learning of the violations, his creation of a custom or policy under which the violations either occurred or were allowed to

continue, or lastly, if he was grossly negligent in overseeing the employees who were responsible for the violation of plaintiff's rights.  Id.

Given the number of state defendants, separate consideration of each of the allegations against them is necessary.  It also follows that plaintiff may establish each defendant's personal involvement as to some, but not necessarily all, of the claims.

### a.  Michael Chapman

Defendant Chapman's personal involvement is established through plaintiff's factual allegations that he acted in a supervisory role, (Pl's. Am. Compl., Dkt. No. 37, ¶ 9,) failed to address racially derogatory comments made by plaintiff's co-workers after learning of the language used, (id. ¶ 26,) personally made racially derogatory comments to plaintiff, (id. ¶ 25,) threatened plaintiff in response to his complaints of unlawful conduct, (id. ¶ 27) and held him past the end of his work shift.  (Id. ¶¶ 36-37.)

### b.  Bernard Stooks

Defendant Stooks's was personally involved in the violation of plaintiff's civil rights to the extent that he acted in a supervisory role, (id. ¶ 10,) acted with defendant Chapman to hold plaintiff past the end of his work shift, (id. ¶¶ 36-37,) and chastised plaintiff in front of his co-workers due to his prior complaints of discrimination.  (Id. ¶ 38.)

### c.  William Moorehead

Defendant Moorehead's personal involvement is established through plaintiff's factual allegations that he was responsible for supervising defendants Chapman and Stooks, (id. ¶ 11,) yet failed to remedy their unlawful behavior after plaintiff complained to him about their conduct.  (Id. ¶¶ 27, 39.)

### d.  James Catanzaro

Defendant Catanzaro's personal involvement is limited to plaintiff's allegation that he worked as the Chief of Security at the Psychiatric Center, (id. ¶ 13,) and conspired with the union defendants to send the New York State Trooper to plaintiff's home in retaliation for his prior complaints of discrimination. (Id. ¶ 44.)

### e.  Richard Stevenson

Defendant Stevenson was personally involved in violating plaintiff's civil rights to the extent that he was the Deputy Director of the Psychiatric Center, (id. ¶ 14,) supervised defendants Chapman and Stooks, (id.,) took no corrective action after learning of plaintiff's complaints of retaliation and hostility during the August 31, 2005 meeting, (id. ¶ 41,) and conspired with the union defendants to refuse plaintiff's request for a transfer to another state psychiatric facility on account of his race. (Id. ¶¶ 41-43.)

### f.  Corey Conley

Defendant Conley's personal involvement is established through his role as a supervisor for defendants Chapman and Stooks, (id. ¶ 15,) and his failure to address their allegedly unlawful conduct on account of his race after learning of plaintiff's complaints during the August 31, 2005 meeting.  (Id. ¶ 41.)

### g.  Hal E. Smith

Defendant Smith was the Executive Director of the Psychiatric Center, (id. ¶ 12,) and his personal involvement is limited to the allegation that he conspired with the union defendants to send the New York State Trooper to plaintiff's home. (Id. ¶ 44.)

### h. **Janet Hanna**

Defendant Hanna's personal involvement is established through her role as Director of Institution Human Resources Management, (id. ¶ 16,) and the allegation that she intentionally omitted or misrepresented information concerning plaintiff's disability in retaliation for his prior complaints of discrimination.  (Id. ¶ 52.)

### I. **Pamela Carrier**

Similarly, plaintiff establishes defendant Carrier's personal involvement by alleging that she was responsible for processing his Workers' Compensation application as the Principal Clerk at the Psychiatric Center, (id. ¶ 17,) and that she intentionally omitted or misrepresented information about his disability to the Workers' Compensation Board in retaliation for his prior complaints of discrimination.  (Id. ¶¶ 50-52.)

### 4. **Racial Discrimination (Causes of Action One, Two, and Three)**

As discussed, plaintiff's first cause of action for racial discrimination pursuant to § 1981 must be dismissed as to the state defendants because of the Supreme Court's ruling in Jett, 491 U.S. at 735, 109 S. Ct. at 2723.  Plaintiff's remaining racial discrimination claims against the state defendants pursuant to § 1983 and the HRL is subject to the same legal analysis as claims brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.  Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006) (citing Feingold v. New York, 366 F.3d 138, 159 & n.20 (2d Cir. 2004)); Farias v. Instructional Systems, Inc., 259 F.3d 91, 98 (2d Cir. 2001) (citing Cruz v. Coach Stores, Inc., 202 F.3d 560, 565, n.1 (2d Cir. 2000)).  In order to state a claim for racial discrimination, plaintiff must allege: (1) he is a member of a protected class; (2) he performed his job in a satisfactory manner; (3) he suffered an adverse employment action; and (4) there were circumstances

giving rise to an inference of discrimination.  Demoret, 451 F.3d 151 (citation omitted).

Although the state defendants concede that plaintiff is obviously a member of a protected

class and suffered an adverse employment action, they contend his amended complaint is

deficient as to the second and fourth elements.

The state defendants first argue that plaintiff is unable to show he performed his

job in a satisfactory manner because he was out on disability from July 2004 until August 8,

2005 and from August 19, 2005 until his eventual termination on August 20, 2006.  Although

plaintiff acknowledges that he was disabled during these time periods, he also alleges in his

amended complaint that he "always performed his job duties in a competent and professional

manner, successfully completing his one-year probationary period on or about June 23,

2004.  (Pl's. Am. Compl., Dkt. No. 37, ¶ 23.)  Accordingly, plaintiff has satisfied his minimal

burden to plead facts which would establish that he performed his job in a satisfactory

manner.

The state defendants' argument that plaintiff does not plead facts giving rise to an

inference of discrimination is unpersuasive for the same reason that plaintiff adequately

states a racial discrimination claim against the union defendants; that is, plaintiff alleges state

defendants Stevenson and Conley refused to accommodate his request for a transfer to

another psychiatric facility on account of his race.  Additionally, plaintiff alleges that state

defendants Hanna and Carrier intentionally misrepresented information in connection with his

claim for Workers' Compensation benefits whereas white employees were frequently

assisted with their claims for disability benefits.  Despite the fact that the Workers'

Compensation Board, and not the state defendants, are responsible for the ultimate denial of

plaintiff's disability benefits, see N.Y. WORKERS' COMP. LAW § 20(a), plaintiff can still state a

claim for racial discrimination under the theory that the state defendants influenced the Board's decision because of intentional acts motivated by racial animus, especially in light of the state defendants' concession that the denial of benefits satisfies the third element of plaintiff's discrimination claim.  (See State Defs'. Mem. of Law, Dkt. No. 43-2, 15.)  Therefore, with respect to these specific employment actions, plaintiff alleges facts giving rise to an inference of racial discrimination and states a viable disparate treatment claim against state defendants Stevenson, Conley, Hanna, and Carrier (Causes of Action Two and Three).

In contrast, plaintiff's factual allegations surrounding his termination from the Psychiatric Center do not give rise to an inference of racial discrimination.  Plaintiff never alleges that his discharge in August of 2006 was based upon race or that white employees are permitted to retain their positions after being medically disabled for more than a year. The allegations in plaintiff's amended complaint concerning his discharge are limited to: "In a July 20, 2006 letter from Defendant Hanna, Plaintiff was informed that he was being terminated as of August 20, 2006 due to his medical disability.  Plaintiff was thereafter terminated even though he had not been 'medically' absent for a year."  (Pl's. Am. Compl., Dkt. No. 37, ¶ 53.)  Plaintiff's termination is not further discussed in any other section of the amended complaint.  In fact, plaintiff never alleges which, if any, defendants were responsible for the decision to terminate his employment.  At most, plaintiff alleges that he was improperly terminated prior to being on leave from work for more than a year.  Even assuming that is true, plaintiff never alleges that his termination was on account of his race. Accordingly, he does not allege facts that would establish he was fired due to racial discrimination, and his termination may not serve as the basis for his disparate treatment claim.

Absent any additional allegations of disparate treatment, plaintiff does not allege sufficient facts to establish a racial discrimination claim against defendants Chapman, Stooks, Moorehead, Catanzaro, or Smith.  Rather, the allegations against these defendants are limited to plaintiff's remaining causes of action.  Therefore, to the extent defendants Chapman, Stooks, Moorehead, Catanzaro, and Smith are named as defendants in <u>Causes of Action One</u>, <u>Two</u>, and <u>Three</u>, these claims will be dismissed.

### 5.  Retaliation (Causes of Action Seven, Eight, and Nine)

For the same reasons as discussed during consideration of the union defendants' motion to dismiss, plaintiff does not state a claim for retaliation pursuant to § 1983 in <u>Cause of Action Eight</u> because he alleges a deprivation of his rights under the equal protection clause of the Fourteenth Amendment as opposed to his right to free speech under the First Amendment.  Therefore, his failure to allege the violation of a recognized constitutional right in connection with his retaliation claim, together with the rule established in <u>Jett</u> prohibiting <u>Cause of Action Seven</u> under § 1981 against the state defendants, dictates that his only remaining retaliation claim against the state defendants is under the HRL (<u>Cause of Action Nine</u>).

Retaliation claims brought pursuant to the HRL are analyzed under the same legal standard as claims brought under Title VII.  <u>See</u> <u>Patane v. Clark</u>, 508 F.3d 106, 115-17 (2d Cir. 2007).  The state defendants contend that plaintiff does not allege sufficient facts to establish a causal connection between his complaint of discrimination and any of the materially adverse employment actions.  In particular, the state defendants argue that there is no basis to establish that any acts of retaliation were motivated by plaintiff's discrimination complaint because he was terminated nearly two years after the complaint was made.

However, plaintiff alleges a number of facts which occurred shortly after his return to work on

August 8, 2005, including the state defendants' supposedly inaccurate and/or incomplete

representations to the Workers' Compensation Board, the arrival of a New York State

Trooper at his home, and the denial of his request to be transferred to another state

psychiatric facility.  Plaintiff also alleges defendants Chapman and Stooks held him past the

end of his shift on August 12, 2005.  Regardless of the two-year period between his first

internal complaint of discrimination and his eventual termination, plaintiff experienced a

number of other adverse employment actions in the interim period and there are sufficient

facts alleged to establish that each of the state defendants were motivated by plaintiff's prior

complaints of racial discrimination.  Therefore, <u>Cause of Action Nine</u> will not be dismissed.

### 6.  <u>Hostile Work Environment (Causes of Action Four, Five, and Six)</u>

In support of their motion to dismiss plaintiff's hostile work environment claims, the

state defendants contend that plaintiff's allegations are not sufficiently severe or pervasive to

have altered the conditions of his employment because he only identifies two events

contributing to the hostile work environment, i.e., the decision to hold him past his scheduled

work shift and defendant Stooks's criticism of him in front of his co-workers for picking up his

paycheck.  (<u>See</u> State Defs'. Mem. of Law, Dkt. No. 43-2, 12.)  Even assuming that plaintiff's

allegation concerning the New York State Trooper were to constitute a third event

contributing to the hostile work environment, there is nothing in the amended complaint to

suggest that any of these events occurred "because of [his] membership in a protected

class." <u>Brennan</u>, 192 F.3d at 318.  Of the three events, only plaintiff's allegation that

defendant Stooks criticized him for picking up his paycheck includes a short statement in the

amended complaint that "employees who are white or do not file claims of discrimination are

not similarly subjected to such hostility."  (Pl's. Am. Compl., Dkt. No. 37, ¶ 38.) The two other

events are alleged to have occurred in retaliation to plaintiff's prior complaints of

discrimination, and in any event, none of the events are alleged to be racially offensive or

derogatory.

Moreover, despite the ruling that plaintiff may recover for hostile acts outside the

three-year statute of limitations, plaintiff may not benefit from the holding in Nat'l R.R.

Passenger Corp. v. Morgan unless "an act contributing to the claim occur[red] within the filing

period."  536 U.S. at 117, 122 S. Ct. at 2074.  Even after accepting as true that Stooks's

criticism of plaintiff in front of his co-workers was due to his being an African-American,

plaintiff does not allege that defendant Stooks was personally involved in any of the hostile

acts which occurred prior to August 8, 2005.  (See Pl's. Am. Compl., Dkt. No. 37, ¶¶ 24-24.)

Accordingly, all of the allegations of hostile acts prior to August 8, 2005 are irrelevant as to

the hostile work environment claim asserted against defendant Stooks, and the single event

attributed to him after August 8, 2005 is insufficient to meet the threshold level of

pervasiveness needed to sustain plaintiff's claim.  Having failed to allege that any other

hostile acts occurred within the filing period and were motivated by his race, plaintiff does not

state a hostile work environment claim against any of the state defendants.  Therefore,

Causes of Action Four, Five, and Six will be dismissed in their entirety.

### 7.  **Conspiracy to Violate Plaintiff's Constitutional Rights**

### **(Causes of Action Ten and Eleven)**

The state defendants' motion to dismiss plaintiff's § 1985 conspiracy claim must be

denied for the same reasons stated in consideration of the union defendants' motion.

Plaintiff makes two separate allegations that, if true, could establish a meeting of the minds

between the union defendants and a number of the state defendants.  First, plaintiff alleges

that the union defendants reneged on their agreement to help process his workplace

grievance and facilitate his transfer request after a closed-door meeting with state defendant

Stevenson.  (Pl's. Am. Compl., Dkt. No. 37, ¶ 43.)  Second, plaintiff alleges that state

defendants Smith and Catanzaro acted together with the union defendants to order the New

York State Trooper to arrive at his home and direct him to report to defendant Jones.  (Id. ¶

44.)  Accordingly, plaintiff's allegations are sufficient to sustain <u>Causes of Action Ten</u> and

<u>Eleven</u> against state defendants Stevenson, Smith, and Catanzaro.

All remaining state defendants are either alleged to have only cooperated with

other state defendants or are altogether omitted from plaintiff's allegations of a conspiracy.

Moreover, plaintiff presents no argument in his memorandum of law for how each of the

remaining state defendants are alleged to have entered into a conspiracy.  Therefore,

<u>Causes of Action Ten</u> and <u>Eleven</u> against state defendants Stooks, Moorehead, Conley,

Hanna, and Carrier will be dismissed.

## 8.  **Discrimination on Account of Disability (Causes of Action Twelve, Thirteen, and Fourteen)**

Plaintiff's claims of discrimination on account of his disability brought against the

state defendants pursuant to the ADA and the Rehabilitation Act must be dismissed because

neither federal statute allows for individual liability.  <u>See</u> <u>Garcia v. S.U.N.Y. Health Sciences</u>

<u>Ctr. of Brooklyn</u>, 280 F.3d 98, 107 (2d Cir. 2001) (collecting cases).  Plaintiff's citation to <u>P.N.</u>

<u>v. Greco</u>, 282 F. Supp. 2d 221 (D. N.J. 2003) is unpersuasive.  In <u>P.N.</u>, the District of New

Jersey held that the ADA and the Rehabilitation Act normally did not provide for individual

liability but that the plaintiffs could bring claims under both statutes against individual

defendants pursuant to § 1983 so long as the defendants were state actors.  Id. at 241, 243.

Significantly, the only case cited by P.N. in support of its holding is W.B. v. Matula, 67 F.3d

484 (3d Cir. 1995) which was later abrogated by A.W. v. Jersey City Public Schools, 486

F.3d 791 (3d Cir. 2007).[4]  In A.W., the Third Circuit expressly held that a plaintiff could not

assert a claim under § 1983 for alleged violations of his rights under the Rehabilitation Act.

486 F.3d at 805-06.  Accordingly, there is no reason to adopt the holding in P.N., and

plaintiff's federal disability discrimination claims against the state defendants will be

dismissed (Causes of Action Twelve and Thirteen).

With respect to plaintiff's state law disability discrimination claim under the HRL

(Cause of Action Fourteen), the state defendants only argue that the HRL does not allow for

individual liability.  However, as already discussed, the HRL does allow for individual liability

so long as plaintiff can demonstrate that the defendant actually participated in the unlawful

conduct.  See, e.g., Evans-Gadsen, 332 F. Supp. 2d at 598.  Therefore, without any

additional argument from the state defendants, plaintiff's disability discrimination claim under

the HRL will not be dismissed.

### 9.  Qualified Immunity

Finally, the state defendants argue that they are entitled to qualified immunity

because plaintiff fails to allege any facts that demonstrate the violation of a clearly

established constitutional right.  State officials are entitled to qualified immunity if a plaintiff

does not allege the violation of a clearly established constitutional right, or, even if a plaintiff's

---

[4] W.B. was cited in P.N. in support of the court's holding that the Rehabilitation Act allowed for individual liability so long as the claim was asserted against a state actor under § 1983. P.N., 282 F. Supp. 2d at 241.  However, with respect to individual liability under the ADA, the P.N. court did not cite any case law in support of its holding.  See id. at 243.

rights were clearly established, if it was objectively reasonable for the state officials to believe that their actions were lawful.  Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006).  Notably, the state defendants offer only a limited argument under the first consideration of the qualified immunity analysis; that is, they contend that the amended complaint does not allege facts establishing the violation of any clearly established constitutional rights, but they do not argue that their actions were objectively reasonable.  (See State Defs'. Mem. of Law, Dkt. No. 43-2, 22.)  Therefore, the only issue for consideration is whether the constitutional rights identified in plaintiff's amended complaint were clearly established at the time of the alleged unlawful conduct.

As a preliminary matter, qualified immunity is generally inappropriate at the pleading stage.  See Woods v. Goord, No. 09-CV-3255 (SAS), 2002 WL 731691, at *10 (S.D.N.Y. April 23, 2002) (citing Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001); King v. Simpson, 189 F.3d 284, 289 (2d Cir. 1999)).  Additionally, there is little debate that a state employee has a clearly established constitutional right under the equal protection clause to be protected against discrimination and retaliation on account of his race, see, e.g., Patterson v. Balsamico, 440 F.3d 104, 115 (2d Cir. 2006), and in any event, the state defendants do not cite any case law to the contrary.  (See State Defs'. Mem. of Law, Dkt. No. 43-2, 22.)  Accordingly, the state defendants' motion for qualified immunity as a matter of law will be denied.

## IV.  CONCLUSION

After accepting all of his factually allegations as true, plaintiff states viable claims against the union defendants for racial discrimination, retaliation, conspiracy to violate his constitutional rights, and disability discrimination.  Having alleged sufficient facts to establish

that the union defendants conspired with at least some of the state defendants, there is a basis to determine that the union defendants were state actors and were personally involved in the deprivation of his civil rights.  In contrast, plaintiff does not state a claim against the union defendants for a hostile work environment because he cannot demonstrate that the alleged events either occurred due to his membership in a protected class or were sufficiently pervasive to meet the threshold level of severity needed to sustain his claim.

With respect to the state defendants, plaintiff does not state a hostile work environment claim for the same reasons as with the union defendants.  Plaintiff's ability to recover for hostile acts which occurred outside the three-year statute of limitations is contingent upon his allegation of a hostile act that occurred within the statutory filing period. Although he arguably alleges three events which occurred within the three-year statute of limitations and contributed to his hostile work environment, plaintiff does not allege facts which demonstrate that these events occurred because of his membership in a protected class.  Of the three events, only defendant Stooks's criticism of plaintiff for picking up his paycheck is loosely alleged to be motivated by his status as an African-American. Nevertheless, none of the other acts attributed to defendant Stooks are alleged to have occurred due to plaintiff's race, and therefore, this single event of racial hostility is insufficient to sustain plaintiff's hostile work environment claim.

Plaintiff states a discrimination claim to the extent he alleges that defendants Stevenson and Conley ignored his transfer request and defendants Hanna and Carrier omitted or misrepresented information about his disability to the Workers' Compensation Board.  However, none of the other state defendants are alleged to have discriminated against plaintiff because of his race.  Rather, the remaining state defendants are alleged to

have taken adverse actions against plaintiff in retaliation for his prior complaints of discrimination.

Finally, plaintiff's federal law disability discrimination claims must be dismissed because neither the ADA nor the Rehabilitation Act allow for individual liability, but plaintiff's state law disability discrimination claim will not be dismissed because plaintiff alleges facts which occurred within the three-year statute of limitations and the HRL allows for individual liability.

Accordingly, it is

ORDERED that

(1) The union defendants' motion is GRANTED as to the following claims and these claims are DISMISSED:

      (a) the hostile work environment claims asserted under Causes of Action Four, Five, and Six;

      (b) the § 1983 retaliation claim asserted under Cause of Action Eight;

      (c) the disability discrimination claims asserted under Causes of Action Twelve and Thirteen;

(2) The union defendants' motion as to the following claims is DENIED:

      (a) the racial discrimination claims asserted under Causes of Action One, Two, and Three;

      (b) the retaliation claims asserted under Causes of Action Seven and Nine;

      (c) the conspiracy claims asserted under Causes of Action Ten and Eleven;

(d) the disability discrimination claim asserted under <u>Cause of Action</u>
<u>Fourteen</u>;

(3) The state defendants' motion is GRANTED as to the following claims and these
claims are DISMISSED:

(a) the § 1981 claims asserted under <u>Causes of Action One</u>, <u>Four</u>, and
<u>Seven</u>;

(b) the racial discrimination claims asserted against defendants Chapman,
Stooks, Moorehead, Catanzaro, and Smith under <u>Causes of Action Two</u>
and <u>Three</u>;

(c) the hostile work environment claims under <u>Causes of Action Five</u> and
<u>Six</u>;

(c) the § 1983 retaliation claim asserted under <u>Cause of Action Eight</u>;

(d) the conspiracy claims asserted against defendants Stooks,
Moorehead, Conley, Hanna, and Carrier under <u>Causes of Action Ten</u> and
<u>Eleven</u>;

(e) the disability discrimination claims asserted under <u>Causes of Action</u>
<u>Twelve</u> and <u>Thirteen</u>;

(4) The state defendants' motion as to the following claims is DENIED:

(a) the racial discrimination claims asserted against defendants
Stevenson, Conley, Hanna, and Carrier under <u>Causes of Action Two</u> and
<u>Three</u>;

(b) the HRL retaliation claim asserted against all state defendants under
<u>Cause of Action Nine</u>;

(c) the conspiracy claims asserted against defendants Stevenson, Smith, and Catanzaro under Causes of Action Ten and Eleven;

(d) the disability discrimination claim asserted under Cause of Action Fourteen;

(5) Plaintiff is barred from recovering damages for any acts of discrimination or retaliation occurring prior to August 8, 2005;

(6) Plaintiff is barred from recovering damages as a result of his termination from employment on August 20, 2006;

(7) The state defendants' motion to dismiss based upon qualified immunity is DENIED;

(8) To summarize, Causes of Action Four, Five, Six, Eight, Twelve, and Thirteen are DISMISSED in their entirety;

(9) The following causes of action remain against the following defendants:

(a) One: defendants Zulko and Jones;

(b) Two and Three: defendants Zulko, Jones, Stevenson Conley, Hanna, and Carrier;

(c) Seven: defendants Zulko and Jones

(d) Nine: defendants Zulko, Jones, Stevenson, Conley, Smith, Catanzaro, Hanna, Carrier, Chapman, Stooks, and Moorehead;

(e) Ten and Eleven: defendants Zulko, Jones, Stevenson, Smith, and Catanzaro;

(f) Fourteen: defendants Zulko, Jones, Stevenson, Conley, Smith, Catanzaro, Hanna, Carrier, Chapman, Stooks, and Moorehead

(g) <u>Fifteen</u>: defendants Moorehead, Catanzaro, Stevenson, Conley,

Smith, and Hanna;

(10) All defendants are directed to file and serve an answer to the remaining

causes of action in the amended complaint no later than November 23, 2009.

IT IS SO ORDERED.

_____
United States District Judge

Dated: November 9, 2009
         Utica, New York